**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ANDREW BURGESS,                          :
               Plaintiff                :
                       :          CIVIL ACTION NO. 2:23-cv-01369
      v.                               :
                       :
CENTRAL BUCKS SCHOOL DISTRICT,  :
ABRAM M. LUCABAUGH, in his       :
official and individual capacity,          :
               Defendants

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION FOR PARTIAL DISMISSAL**
**OF PLAINTIFF'S COMPLAINT**


**MARSHALL DENNEHEY**

DATE:  July 10, 2023               BY:   */s/ Sharon M. O'Donnell*
                                    Sharon M. O'Donnell, Esquire
                                    PA I.D. No. 79457
                                    100 Corporate Center Dr., Suite 201
                                    Camp Hill, PA  17011
                                    (717) 651-3503 /Fax (717) 651-3707
                                    smodonnell@mdwcg.com

**PLAINTIFF'S COUNT I, A CAUSE OF ACTION ALLEGING FIRST AMENDMENT RETALIATION, FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND SHOULD BE DISMISSED**

Plaintiff alleges in Count I that he was a victim of retaliation under the First Amendment while employed as a social studies teacher for the Defendant, Central Bucks School District. Defendant, Central Bucks School District, disagrees that he was a victim of First Amendment retaliation and moves for the dismissal of this claim for the reasons that follow below.

1. Standard of Review

Under *Iqbal*[1] and *Twombly*[2], only well-plead allegations of fact may be taken as true; legal conclusions must be disregarded. The plaintiff is required to make a showing that he is entitled to relief beyond mere conjecture or a mere possibility of misconduct. *Fowler; Phillips.*[3]

2. Plaintiff has failed to show that Defendant(s) unlawfully retaliated against him in violation of his First Amendment Right to Free Speech as a public employee when he was disciplined for thwarting the District's ability to investigate allegations and/or intervene in verbal bullying of LGTBQ+ students

A state may not discharge an employee on a basis that infringes that employee's constitutionally protected right of free speech.[4] However, the State also has interests in regulating speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general.[5] More to the point, a balancing test may

---

[1] *Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)*
[2] *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2009)*

[3] *Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d. Cir. 2009); Phillips v. Cty. Of Allegheny, 515 F.3d 224, 230 (3d. Cir. 2009)*
[4] *Rankin v. McPherson, 483 U.S. 378, 383 (1987).*
[5] *Pickering v. School Dist. of Philadelphia, 772 F.3d 979 (3d. Cir. 2014).*

be used to weigh the interest of free speech of an employee/citizen, in [activity] that may speak to matters of public concern against the interest the State has in promoting the efficiency of the public services it performs through its employees. *Id.*  The more tightly the First Amendment embraces the employee's speech, the more vigorous a showing of disruption that must be made by an employer.[6]

Defendant's factual history noted in the argument below relies exclusively on the allegations of Plaintiff's Complaint.   At the time of his first discipline, Plaintiff was an 8th grade social studies teacher at Lenape Middle School, Central Bucks School District.[7]  Plaintiff's well-plead allegations state the following.

Plaintiff was told by Student A that Student A was being physically and verbally bullied and eventually held a meeting with Student A's mother and adult sister on March 10, 2022, to tell them about the litany of bullying incidents that Student A had described to him and shared the table (of complaints) they had developed.[8]

Plaintiff admits that he told Student A's mother and sister that they had two options: Burgess could submit a report to CBSD (the District) using the BDR system (a system Plaintiff himself developed for the District)[9] and/or file a complaint with OCR (Office of Civil Rights.)  [10]

Plaintiff admits at *paragraph 67* of his Complaint that "CBSD would later suspend Burgess, stating that the above course of events showed a "dereliction of [his] obligations to

---

[6] *Deltondo v. Sch. Dist. Of Pittsburgh, 2023 WL 2876812 (W.D. Pa. Jan. 30, 2023) at *5, citing, Pickering, supra; and Hill v. Borough of Kutztown, 455 F.3d 225 241-42 (3d. Cir. 2006).*
[7] [DOC. 1, p. 5 of 39, Introduction; ¶30.]
[8] [DOC. 1, ¶58.]
[9] [DOC. 1, ¶¶ 40-42.
[10] *[DOC. 1, para. 59].*

[Student A] ….as well as a deliberate failure to follow the proper protocol so that the administration could address and rectify these bullying conditions." [11]

Regardless of the legitimacy of Plaintiff's actions in assisting Student A to file an OCR complaint, it was misconduct for Plaintiff to interfere with the District's protocol which provides the Administration with a preferred method of investigation and discipline of student bullies.[12] According to Plaintiff's own pleading, Plaintiff himself believed he had an option to do both, but chose to exclude the option that adhered to the District's policy.

Regardless of Plaintiff's personal feelings about the efficacy of the District's investigation protocol and disciplinary results regarding student bullying[13], it was incumbent upon him as an employee to follow the policy for reporting student misbehavior to Administration.   Anything to the contrary is a violation of that policy and Plaintiff cannot hide behind the First Amendment to protect him from his employer's discipline.  Moreover, there are no exceptions to the District's reporting policy, and Plaintiff, of course, cites none.  He stands alone ceremoniously on his personal beliefs that his handling of Student A's report of bullying was above the policy, and the reach, of the District.  Therefore, once known, Plaintiff's flagrant disregard for his employer's policy was a significant enough disruption of District protocol to warrant discipline via suspension.[14]   The law is very clear that a municipal entity may discipline the employee who interferes with its business endeavors.  *Garcetti*.

---

[11] Plaintiff's [inserts] into this paragraph are of his own making and not of the District's making.  In fact, Plaintiff had an obligation to the District as well as Student A not to interfere with its protocol for investigations into allegations of bullying.

[12] *Lahovski, et al. vs. Rush Twp, et al., 441 F.Supp.3d 43 (M.D. Pa, 2020, Mannion, J.), citing, Garcetti v. Ceballos, 547 U.S. 410, 417, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) (If public employees speak in the course of their employment, "the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."*

[13] [DOC. 1, ¶¶23, 26, p. 12 of 39] "Defendants took no discernable action to rectify Student A's troubling situation; CBSD took no discernable action to address the reported bullying in response to this email either"
[14] [DOC. 1, ¶67, ¶102(a)-(e). ]

3.   Plaintiff's interference with other teachers' classroom library content was equally disruptive of the District's business endeavors and serves as further proof that Plaintiff does not enjoy the free speech protections of the First Amendment and as such his claim should be dismissed.

Plaintiff complains that he was disciplined for interfering with the business endeavors of Building Principal Saullo, regarding her instructions regarding the content of classroom libraries.[15]  Plaintiff once again asserts that he provided "advice about options", this time to other teachers in his building.[16]  Although in his Complaint he denies telling his colleagues "not to cross union lines" that, in and of itself, even if true, is harmless and nothing more than a red herring to these facts.  The primary fact is that his interference and disruption within the District protocol for compliance with policy regarding library content is enough to remove the cloak of First Amendment protection.  *Garcetti.*  Factors relevant to the analysis of whether or not Plaintiff's behaviors are protected speech include: his duties, the impetus for his speech, the setting and subject matter of that speech, and the identities of the individuals to whom that speech is addressed.  *FN 15.*

Here, *Garcetti* is further instructive in the sense that even if Plaintiff believed that he was speaking out on matter of public concern, i.e., to promote the LGBTQ+ sexual content of middle school classroom library books to his colleagues, the fact that he was a Lenape Middle School teacher telling other Middle School teachers what their options were for housing sexual content in their classroom libraries does not change his legal status from teacher to taxpayer/private citizen.[17]  Rather, he spoke as an employee of the Lenape Middle School to other employees of the Lenape Middle School on matters of concern to Principal Saullo of the Lenape Middle School, and the District.  Notably, he spoke in derogation of the protocol and policies of the

---

[15] [DOC. 1, ¶¶72-78.
[16] ¶102(e), infra.
[17] *See, Lahvoski, at \*28.*

Lenape Middle District when he told his colleagues, without endorsement from his building Principal, that his colleagues had "options" for their classroom libraries.[18]   Therefore, this is enough of a disruption to District protocol and his Building Principal's authority to warrant his discipline.   This claim should also be dismissed.

    4.   <u>Plaintiff's allegations of undisclosed retaliatory acts in Paragraphs 152-155 of his Complaint do not pass legal muster under *Iqbal* and *Twombly* and must be dismissed</u>

Plaintiff further alleges at ¶¶ 152-155 "additional retaliatory acts" that violate his First Amendment rights but states that "due to potential legal constraints on disclosure, Burgess does not detail that act here."   Burgess has an obligation to plead concise facts under FRCP 8 and must provide enough detail under *Iqbal* and *Twombly* to make a showing that he is entitled to relief.  There are no facts in ¶¶152-155 that allowing such a showing to be made.  Consequently, any claim stated here must be dismissed.

    5.   <u>Plaintiff's claims against Defendant Lucabaugh, both his official and individual capacities, along with a claim for punitive damages, must be dismissed</u>

It is practically axiomatic that a first amendment retaliation claim requires a showing that: (a) the activity of a public employee is protected by the First Amendment; and that the activity was a substantial or motivating factor of the employer's retaliatory actions.   If both elements have been met, the burden shifts to the defendant employer to show that the employment action would have been taken even if the First Amendment activity, including speech, had not occurred.[19]

---

[18] DOC. 1, ¶¶72-78, pp. 20, 21 of 39.]
[19] *Lahovski at *6, 7, citing Falco v. Zimmer, 767 Fed.Appx. 288, 299 (3d Cir. 2019)(citations omitted); and Flora v. Luzerne County, 766 F.3d at 174*

In these claims, Plaintiff does not identify what "speech", if any, was disciplined.  His actions can however be construed to be "speech," as his complaint exalts his alleged special knowledge of the LGBTQ+ community to warrant his actions, which are tantamount to intentional disruption and interference with the District's business endeavors regarding LGBTQ+ students.  This is obvious both in terms of his outright abject refusal to follow protocol that required him to escalate a report within the District regarding the bullying of Student A, and his "advice" to fellow colleagues about the content of classroom library materials. These disruptive and interventionist activities do not cloak him with the protection of the First Amendment.   This is because his "speech" cannot be construed to "advance a political or social point of view beyond the employment context" [20] [21] [22].   Here, Plaintiff identifies no spoken words or language that can be arguably labeled "protected"; rather, Plaintiff identifies his "inaction" (disregard of the District's bullying policy) fueled by his "serious doubts[23]"  (that the District would handle the complaints via "best practices"[24]) as the alleged "protected speech," and as the alleged violation of which he sues to recover damages.   There is no showing of protected speech when one alleges that one has "serious doubts."  That is simply not enough to warrant constitutional protection under *Iqbal* and *Twombly* and *Garcetti*.   He alleges that his "serious doubts"  resulted in a disregard of the reporting protocol put in place by Defendant Lucabaugh and the School Board for handling bullying matters.   Because Plaintiff wrongfully believed that had an option

---

[20] *see, Lane v. Franks, 573 U.S. 228 (2014) (speech by public employees that is outside of their ordinary responsibilities is not protected;)*

[21] *See, Weintraub v. Board of Education, 593 F.3d 1906, 203 (2d Cir. 2010) (factors include the employees' duties, the impetus for his speech, the setting and subject matter of that speech and the identities of the individuals to whom that speech is addressed, citing* Brown v. Tucci, 960 F.Supp.2d 544 (W.D. Pa. 2013) and Weisbarth v. Geauga Park District, 499 F.3d 538, 546 (6th Cir. 2007).

[22] *See, Handy-Clay v. City of Memphis, 695 F.3d 531, 540-41 (6th Cir. 2012)(whether the speech was made inside or outside of the work place and whether it concerned the subject matter of the speaker's employment).*

[23] [DOC.1, ¶54, p. 13, "Burgess was having serious doubts that the administration was taking appropriate action to keep students safe from bullying based on LGTBQ+ status."

[24] [DOC. 1, ¶7, p. 6.]

to either adhere to District policy and protocol, or thwart it, and having chosen the latter,

Defendant Lucabaugh must be free to discipline an employee's wrongful conduct and otherwise

address the disruption in the Lenape building[25] and move the employee to another building if it

he deems it in the best interests of the District.    His actions in this case must be recognized as

employment matters which were appropriate under the circumstances.  *Monroe v. Central Bucks*

*School Dist., 805 F.3d 454 (3d Cir. 2015); Garcetti, 547 U.S. 425, 126 S. Ct. 1951.*    It should

be further noted that the alleged conduct that was disciplined is *not* Plaintiff's assistance to a

student to file an OCR complaint; rather, as outlined in the Complaint as various paragraphs[26],

Defendant's discipline was targeted at Plaintiff's refusal to adhere to policy and protocol.[27]

6. Plaintiff's exaltation of the disruptive behavior of student and adult activists who protested outside of the Lenape Middle School for a week following his suspension from employment should be weighed against the District's legitimate business interests in operating an education facility free from distraction and discontent

Plaintiff's Complaint lays out in great detail the angry protests of students and other

community members following his disciplinary suspension.[28]   These protests occurred during

school hours, with honking horns and waving signs, and a "day of silence."  *Id.*

The *Pickering* balancing test requires at least a look into the District's interests in

preventing disruption around the school as well as the efficiency of its public services to its

---

[25] ¶¶115-120 set forth the magnitude of disruption at the Lenape Building starting with a description of "backlash among members of the CBSD (Central Bucks School District) community many of whom believed that CBSD suspended Burgess because of his advocacy for LGBTQ+ students; a group of students did not report to class but rather assembled outside Lenape to demonstrate their support for Burgess; ¶119, in subsequent days, students and community members continued to protest CBSD's treatment of Burgess including by demonstrating outside of Lenape during school hours, honking horns and waving signs, and organizing a day of silence…"
[26] E.g., ¶¶100, 101.
[27] *Cooper v. Menges, 541 Fed. Appx. 228, (3rd Cir. 2013) (Defendant must be aware of the protected conduct in order to establish a causal connection [to the discipline.])*
[28] [DOC. 1, ¶¶119-120, pp. 24, 25.]

students.[29]  Citing the "incendiary atmosphere" in the *Monroe* case, the *Deltondo* court observed

that the Third Circuit focused on the fact that District administration "thought [they were] going

to have a riot or a sit-in or worse."  [30]  Here, unlike the showing in *Deltondo,* "worse" happened.

A week-long protest, cited quite prominently in Plaintiff's complaint, ensued as the result of his

suspension.  Given the fact that personnel matters are confidential, it can only be accurately

inferred that Plaintiff waived his right to confidentiality about his suspension and allowed his

protesters to carry on for a full week, shouting, blaring car horns, and waving signs, all according

to his Complaint.

Plaintiff should not be rewarded with a right to litigate his allegations of First

Amendment Retaliation when he is aware that his actions, and the actions he caused, were very

disruptive to the District's legitimate business interests and therefore are not protected activities.

Count I should be dismissed for those reasons.

7.   The Claim against Superintendent Abraham Lucabaugh in his official capacity should
dismissed along with punitive damages in the claim against Dr. Lucabaugh in his
individual capacity

It is well-settled law that claims against a state actor in his/her official capacity are

redundant to the claim against the state.[31]  The redundancy should be dismissed.  Dr. Lucabaugh

therefore requests that Plaintiff's official capacity claim against him be dismissed.

A claim for punitive damages against an individual Defendant in an action under 42

U.S.C. Section 1983 requires a showing of reckless indifference to the rights of others.[32]  The

showing requirement under *Iqbal* and *Twombly* is more stringent and requires, at least notice of

reckless indifference to Plaintiff's alleged First Amendment rights to speak or act outside of his

---

[29] *Deltondo v. School Dist of Pittsburgh, 2023 WL 2876812 (W.D. Pa. 1/30/2023) *6.*
[30] *Deltondo at *7, citing, Monroe v. Central Bucks School Dist., 805 F.3d 454 (3d Cir. 2015).*
[31] *Kentucky v. Graham, 473 U.S. 159 (1985); Hill v. Kutztown, supra, at 233, n.9.*
[32] *Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d. 632 (1983).*

employment context.  There are substantial allegations in the Complaint regarding Dr.

Lucabaugh's intent to discipline Plaintiff for his interference and disruptive activities.   But all of

those activities were employment-related. There has been no showing whatsoever that Dr.

Lucabaugh's intent was motivation by evil, recklessly indifferent to Plaintiff's rights as a private

citizen or taxpayer, or even to his rights as a union member and a teacher in the District.

Because Plaintiff's actions as described in his Complaint were all based upon his status as a

teacher/employee, and not as a private citizen/taxpayer, it is incumbent upon this Court to

foreclose Plaintiff's punitive damages claim at this point in the litigation.


<u>CONCLUSION</u>

For all of the foregoing reasons, Defendant, Central Bucks School District, and

Defendant, Abram Lucabaugh, in his official and individual capacities, hereby move this

Honorable Court to grant its Motion for Partial Dismissal of Plaintiff's Complaint with prejudice.


**MARSHALL DENNEHEY**

DATE:  July 10, 2023                         BY:    /s/ Sharon M. O'Donnell
                                                    Sharon M. O'Donnell, Esquire
                                                    PA I.D. No. 79457
                                                    100 Corporate Center Dr., Suite 201
                                                    Camp Hill, PA  17011
                                                    (717) 651-3503 /Fax 651-3707
                                                    smodonnell@mdwcg.com

10

## <u>CERTIFICATE OF SERVICE</u>

I, Sharon M. O'Donnell, Esquire hereby certify that a true and correct copy of the foregoing document was electronically filed with the Court this date and is available for viewing and downloading from the ECF System.

**MARSHALL DENNEHEY**

DATE:  July 10, 2023                          BY:    */s/ Sharon M. O'Donnell*
                                                    Sharon M. O'Donnell, Esquire
                                                    PA I.D. No. 79457
                                                    100 Corporate Center Dr., Suite 201
                                                    Camp Hill, PA  17011
                                                    (717) 651-3503
                                                    Fax (717) 651-3707
                                                    smodonnell@mdwcg.com